IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JOSE ANGEL LANDEROS §
Petitioner Pro/se §
VS. §
 § CIVIL ACTION NO.
JANIE COCKRELL, Director, §
Texas Department of Criminal § B-01-169
Justice - Institutional Division, §
Respondent. §

## MOTION FOR AUTHORIZATION TO FILE TO PROCEED WITH A CERTIFICATE OF APPEALABILITY

TO THE HONORABLE HILDA G. TAGLE UNITED STATES JUDGE OF SAID COURT:

NOW COMES, Jose Angel Landeros, Petitioner Pro/se in the above-styled civil action cause and files this his Motion For Authorization To File To Proceed With A Certificate of Appealability Pursuant to the U.S.C.A. § 2253(c),(2) And to the Denial of Petitioner's 28 U.S.C. § 2254 Petition, from the Magistrate Judge's Report And Recommendation on June 3, 2002, that this Honorable Court has jurisdiction of in this matter. Petitioner will show the following Reasons that this Court should GRANT Petitioner to be heard.

### I
### THE SHOWING REQUIRED FOR THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Obtaining a Certificate of Appealability Requires a substantial showing of Constitutional error. 28 U.S.C. § 2253(c),(2). Drinkard v. Johnson, 97 F.3rd 751, 756 (5th Cir. 1996). This entails that the question(s) at issue be (1) debatable among reasonable jurists, (b) of a type which could be Resolved in the petitioner's favor, or (c) adequate to deserve encouragement of further proceedings. Lozada v. Deeds, 498 U.S. 430, 432, 111 S.Ct. 860, 862, 112 L.Ed. 2d 956 (1991).

Petitioner filed his 11.07 on November 30, 2000, that was Denied on March 14, 2001.

Petitioner filed a second 11.07 on May 30, 2001, that was Denied also and Dismissed For Abuse Of The Writ.

Then, Petitioner filed his 2254 on September 13, 2001, that was Denied on April 10, 2002.

[1]

The Honorable Court Replied with the Magistrate Judge's Report And Recommendation to Dismiss Petitioner's U.S.C. §2254 on April 8, 2002.

Petitioner then filed his Objection to the Magistrate Judge's Report And Recommendation to Dismiss on April 22, 2002.

After a de novo review to the entire file, it was the opinion of the Court that the Respondent's Motion to Dismiss be GRANTED on June 3, 2002.

## FACTS AND PROCEDURAL HISTORY

On June 28, 1990, Landeros came before the 197th Judicial District Court of Cameron County, Texas; by the advise of his trial counsel Landeros entered a plea of guilty in a plea agreement with the State.

Landeros contends that before he reached that decision, he explained several times to his attorney, that the victim had threaten to kill him prior to his inadvertant reaction when the victim reached for his waistline for his gun, so in self-defense Landeros beat him to the draw, keep in mind, not intending to kill the victim, only to protect himself and his family, knowing the victim was a well known leader of a gang called the BLOODS. [A well known street gang.]

Landeros contends that this was mentioned in the police report and the only reason that there was no weapon found on the victim was due to the facts, there were some of the victim's gang member's around their follower, so after they witnessed their leader fall and bent over to check him they picked up the victim's weapon and ran from the scene.

Landeros contends that his trial counsel advise him that the State had enough evidence to prove different from what he claimed that the State would get a Life Sentence, if he did not plead guilty, even-though he was still asserting a self-defense throughout the trial court hearing, and continued to tell his counsel that why weren't the necessary motions filed before his trial instead of trying to get him to plead guilty.

The Court then instructed Landeros by waiving his right to have a jury trial that the court was not obligated to accept his plea bargin agreement and the consequences of his guilty plea could be if the court decided not to accept it.

[2]

The Court then accepted Landeros plea of guilty and agreed that the evidence in the record shows that Landeros was guilty. Then the State offered the Judge Exhibits 1 through 7 to substantiate the guilty plea.

Landeros contends that his counsel made no objections to the State's exhibits that where in admissiable and could of been suppressed, eventhough in one of the exhibits had a statement given by a minor child without the presence of an attorney or an adult.

The Court admitted the exhibits into record and the trial counsel with Landeros approached the bench to address the Court in terms of punishment. At that time Landeros directs his attorney to inform the Court of the possibility of self defense that was discussed with the assistant district attorney and asks the Court to consider a 35 years sentence to the Texas Department of Criminal Justice as his punishment.

At that time the Trial Court should of withdrew Landeros guilty plea to Murder; if there was a doubt of a self defense defense. The Trial Court found me guilty of Murder and handed down the 35 years sentence.

Landeros contends that had his trial counsel not mislead him to believe that the State was seeking a Life Sentence and if the trial counsel would of and should of sought for any potential witnesses and conduct a thorough investigation he would not of plead guilty and stuck with his self-defense strategy.

The Court's failure to review the facts would be a miscarriage of Justice and the Counsel's ineffectiveness throughout the trial was way below standard and a poor performance who asked the Court to send his client to the State penitentiary eventhough he knew that Landeros was innocent by reason of self-defense. The trial counsel never wanted to go through the extensive trial hearings that could of gone on for month's and never once asked Landeros if he were actually innocent, but Landeros did tell his trial counsel he was innocent.

[3]

## AUTHORITY TO ISSUE CERTIFICATES OF APPEALABILITY

The First and Seventh Circuits have both promulgated circuit rules allowing district courts to issue certificates of appealability and in fact requiring that petitioners apply initially to the district court, rather than to the court of appeals, for such certificates. 1st Cir. R. 22.1(b) (Interim Rule) ("In this circuit, ordinarily neither the court nor a judge thereof will initially receive or act on a request for a certificate of appealability if the district judge who refused the writ is available unless an application has first been made to the district court judge."); 7th Cir. R. 22.1(b) ("Every request for a certificate of appealability must be made initially to a judge of the district court.").

In the Seventh Circuit the district court's issuance of a certificate of appealability allows the appeal to go forward. The First Circuit, however, has adopted a mandatory two-step process and requires that "[o]nce the district court grants or denies a certificate of appealability, the petitioner should promptly apply to the court of appeals for issuance of a certificate of appealability." 1st Cir. R. 22.1(c) (Interim Rule) (emphasis added). It is only this second certificate of appealability, issued by the circuit court, which allows an appeal. Id. ("The effect of a denial is to terminate the appeal.").

Both courts emphasize that their respective local Rule 22.1 do not necessarily embody the procedure which Congress intended in the AEDPA. See 1st Cir. R. 22.1 Interim Processing Guidelines I(B) ("In adopting this two-step process as an interim measure, we do not now finally determine how any ambiguity in the amendments will be interpreted, but rather leave the matter for comment during the rule making process, 28 U.S.C. §2071, or development in the course of litigation."); 7th Cir. R. 22.1 1996 Note ("Because some potential for doubt remains, however, the new Circuit Rule 22.1(c) calls on every district judge to take a position on the merits, even if the judge believes that the new §2253(c)(1) deprives the district court of the ability to issue a certificate.").

[4]

The local Rules are instead meant to allow habeas appeals to proceed in an orderly manner until the question can be settled more firmly. Since we have decided to try to provide a resolution to this quandary through adjudication, we take note of our sister circuits' provisional solutions and continue our analysis.

The district courts that have examined this issue squarely have arrived at conflicting decisions. For example, in Houchin v. Zavaras, 924 F.Supp. 115, 117 (D.Colo. 1996), the court held that it did have the authority to issue a certificate of appealability, on the grounds that Rule 22 specifically addressed district courts and authorized them to issue certificates of appealability, whereas §2253 applies by its wording only to "circuit justices and judges," and does not prohibit district judges from issuing certificates. This reading of §2253, however, does not address the question of whether a certificate of appealability issued by the district court gives us jurisdiction over the appeal. Sec 28 U.S.C. §2253(c)(1) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may may not be taken to the court of appeals.").

Another district court came to the opposite conclusion. In Parker v. Norris, 929 F.Supp. 1190 (E.D.Ark.1996), the court, after noting that the Act's legislative history "shines absolutely no light on this patently apparent conflict," and agreeing with the Houchin court that "'it is unlikely contemplation played any role at all' in the drafting of these particular amendments," held that, because Rule 22 specifically refers to §2253, the procedures of that statute control. Id. at 1192. The Parker court concluded that Congress simply failed fully to amend Rule 22 to conform to the amendments to §2253(c). Id. at 1193.

We do not find this reasoning persuasive. Rule 22(a) does state that "[t]he applicant may, pursuant to section 2253 of title 28, United States Code, appeal to the appropriate court of appeals from the order of the district court denying the writ," and Rule 22(b) states that an appeal requires that "a district or a circuit judge issue[] a certificate of appealability pursuant to section 2253(c)."

[5]

However, the Remainder of Rule 22(b) clearly contemplates that district courts will issue certificates of appealability. Requiring that "the district judge who rendered the judgment shall either issue a certificate of appealability, or state the reasons why such a certificate should not issue." Fed. R. App. Proc. 22(b). The Rule also provides that if a district judge has denied the certificate, the applicant for the writ may then request issuance of the certificate by a circuit judge." Id. Thus, although this incorporation argument offers a plausible-sounding rationale for favoring the statute over the Rule, it really does no more than restate the issue as a conflict within Rule 22, and not just between the Rule and the statute or between two parts of the statute. The basic question remains: does the retention in Rule 22(b) of a detailed framework including district court issuance of certificates of appealability indicate Congress's true intent, or does the "circuit justice or judge" language of §2253(c)(1) indicate that Congress intended to preclude district judges from exercising this power?

## TEXTUAL ANALYSIS

We next look to our traditional tools of statutory construction to solve this puzzle. See NLRB v. United Food and Commercial Workers Union, 484 U.S. 112, 123, 108 S.Ct. 413, 421, 98 L.Ed. 2d 429 (1987) ("On a pure question job is to try to determine congressional intent, using traditional tools of statutory construction. If we can do then that interpretation must be given effect...");
Sturges v. Crowninshield, 17 U.S. (4 Wheat.) 122, 202, 4 L.Ed. 529 (1819) ("Where words conflict with each other, where the different clauses of an instrument bear upon each other, and would be inconsistent unless the natural and common import of words be varied, construction becomes necessary..."). The most relevant of these tools are also the most basic: if possible, we must read the statute as a coherent whole and give effect to every word of the AEDPA. Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed. 2d 931 (1979); NORMAN J. SINGER, 2A SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 46.06 (5th ed. 1992) [hereinafter SUTHERLAND STAT. CONSTR.]. If that is not possible, "the construction that produces the greatest harmony and the least inconsistency is that which ought to prevail." Id. § 46.05 at p.104 (citation omitted).

[ 6 ]

These considerations lead us to believe that district courts retain the authority to issue certificates of appealability under the AEDPA. Section 2253(c)(1) can, albeit with considerable effort, be read to invest district judges with the authority to issue the certificates: if "circuit" in "circuit justice or judge" is read as the antecedent only of "justice" and not of "judge," then the phrase means "circuit justice or any judge." This is, indeed, a tortured interpretation, but a possible one.

Rule 22, in contrast, can only be read as authorizing both district and circuit judges to issue certificates. The Rule refers to the "district judge who rendered the judgment," and provides a procedure for obtaining a certificate from a circuit judge "[i]f the district judge has denied the certificate." Rule 22(b) (emphasis added).

If § 2253(c)(1) controls, then all of this explicit language in the present Rule 22(b) is superfluous and misleading, and must be ignored. If the Rule controls, then we need only modify the punctuation of § 2253(c)(1), or perhaps add an article. See Lake Cumberland Trust, Inc. v. U.S. EPA, 954 F.2d 1218, 1222 (6th Cir. 1992) ("[W]e must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision ~~~~~ in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous") (quoting Boise Cascade Corp v. U.S. EPA, 942 F.2d 1427, 1432 (4th Cir. 1991)); 2A SUTHERLAND CONSTR. § 46.06 ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous... and so that one section will not destroy another unless the provision is the result of obvious mistake or error"); id. § 46.07 ("[W]ords or clauses may be enlarged or restricted to harmonize with other provisions of an act.").

We also find some slight support for this position in the oft-quoted canon that specific provisions take precedence over more general ones. See id. § 46.05 at 105. Although § 2253(c)(1) and Rule 22(b) are equally specific in that they both explicitly govern the issuance of certificates of appealability, the Rule provides more specific procedure § 2253(c)(1). To the extent that this canon rests on the notion that greater detail and specificity indicate greater legislative attention to a particular provision, it would suggest favoring Rule 22(b) over § 2253(c)(1).

[ 7 ]

# LEGISLATIVE HISTORY

Because this textual solution is not unassailable, we next examine the Act's background and legislative history. Certificates of probable cause have been a prerequisite to appellate review of denials of habeas petitions since 1908. Barefoot v. Estelle, 463 U.S. 880, 892 n. 3, 103 S.Ct. 3383, 3394 n. 3, 77 L.Ed. 2d 1090 (1983). Before this year, both district and circuit judges could, and did, issue the certificates. See 28 U.S.C. § 2253 (1995); Barefoot, 463 U.S. at 893, 103 S.Ct. at 3394-95. Since at least as far back as 1982, however, there have been efforts in Congress to strip district courts of this authority and require petitioners to apply to the courts of appeals for the certificates. See proposed Habeas Corpus Reform Act of 1982, S. 2216, 97th Cong., 128 CONG. REC. S4336-38, §§ 3, 4 (1982) (proposing amendments of § 2253 and Rule 22(b) to allow only appellate judges to issue certificates of probable cause). Throughout the 1980s and the first years of this decade numerous proposals would have amended habeas corpus procedure; most of these would have divested the district courts of the authority to issue the certificates.

Compare, e.g., proposed Habeas Corpus Reform Act of 1989, S 811, 101st Cong., 135 CONG. REC. S811-01, §§ 3,4 (1989) (proposing to amend § 2253 and Rule 22(b) to remove district courts from process) with proposed Omnibus Crime Control Act of 1991, H.R. 7892, 102d Cong., 137 CONG. REC. H7892, § 1107 (proposing to amend § 2253 so that only non-capital appeals require certificates of probable cause, issue by either a district or a circuit judge); proposed amendment No. 2043 to S. 55, 102d Cong., 138 CONG. REC. S8002-02, § 207 (1992)(same). It is impossible to say whether these bills died in Congress because of, despite, or regardless of the changes they did or did not make to this aspect of habeas procedure.

This history therefore does little to help decide the issue. See 2A SUTHERLAND STAT. CONSTR. § 48.01 at p. 302 ("[I]t should be remembered the statements made by persons in favor of a rejected or failed bill are meaningless and cannot be used as an extrinsic aid.").

The 1996 Act's legislative history is similarly unhelpful; to the extent it relates to the question of who may issue the certificates it serves to muddy rather than clarify.

[8]

The record in Congress reveals that the conflict between § 2253(c) and Rule 22(b) is not the product of a last-minute compromise, but existed for more than a year before the bill's passage: the proposed amendments to § 2253 and 22 have been in conflict since the spring of 1995. See S.623, 104th Cong. § 3, 4 (1995) (amending § 2253 and Rule 22 inconsistently). But see Yackle, New Habeas Corpus, 44 Buff-L. Rev. at 390 n. 33 ("failure to amend 22 to conform with § 2253 is 'almost certainly an oversight'"). That the House version of the bill did not contain this inconsistency only adds to the confusion. See H.R. 729, 104th Cong., §§ 102, 103 (1995) (which would have amended both § 2253 and Rule 22 to allow only appellate judges to issue certificates).

At oral argument, the state emphasized that the Act's amendment to § 2253 specifically deleted that that section's reference to district courts' authority to issue certificates of appealability. The amendment to § 2253 deleted the language "the justice or judge who rendered the order or," and retained the language "a circuit justice or judge". Compare § 2253 (1995) with § 2253(c)(1) (1996).

This, the state claimed, demonstrates a clear intent to remove district judges from the process. This argument would be persuasive if we were attempting to determine only the meaning of § 2253, but nobody claims that § 2253 is itself unclear. Rather, the statute as a whole is ambiguous because of the conflict between § 2253(c) and Rule 22(b); additional evidence that § 2253 means what it clearly says is superfluous.

The other relevant part of the Act's legislative history is even more puzzling. On April 4, 1996 — almost two weeks before the final votes on the bill in the House and Senate — the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States sent a letter to Representative John Conyers, the ranking minority member of the House Judiciary Committee, pointing out the conflict between Rule 22(b) and § 2253(c).

The letter noted that "the courts will have a nearly impossible task" of resolving the conflict, and suggested two alternate amendments which would resolve the conflict one way or the other, respectively.

[ 9 ]

The Committee apparently ignored the letter; in any case, no change was made, and there is no record of any response. In the end, then, none of the Act's legislative history gives any indication as to how Congress would decide this issue.

## STATUTORY PURPOSE AND POLICY

We look next to see whether the statute's purpose can help us decide the text's meaning. Congress enacted the AEDPA to streamline habeas corpus process, particularly in capital cases, without violating prisoner's due process rights, see supra note 6. Congress would thus appear to favor a reading of the statute which would expedite the appeals process.

On the one hand, allowing district judges to issue certificates of appealability may have inefficient aspects. If a district judge refuses to issue a certificate, the petitioner may seek a certificate from a circuit judge, adding another time-consuming step to the process. See Fed. R. App. Proc. 22(b); Ira P. Robbins, The Habeas Corpus Certificate of Probable Cause, 44 Ohio St. L.J. 307, 330 n.153 (divesting district courts of power to issue certificates of probable cause would "alleviate the problem argued by some that review by the district judge and then the circuit judge has developed into two time-consuming quasi-appeals" before the merits are considered on appeal).

On the other hand, however, it seems clear that a district judge who has just denied a habeas petition will be able to evaluate that petitioner's request for a certificate of appealability more quickly than would a circuit judge fresh to the case. The district judge will have an intimate knowledge of both the record and the relevant law and could simply determine whether to issue the certificate of appealability when she denies the initial petition. See Taylor v. Mitchell, 939 F. Supp. 249, 258 (S.D.N.Y. 1996) (denying writ and certificate of probable cause in single order); Nichols v. Kelly, 923 F. Supp. 420, 427 (W.D.N.Y. 1996) (denying writ and certificate of probable cause in single order);

[10]

Huffman v. Moore, 333 F.Supp. 1315, 1317 (E.D. Tenn. 1971) (including certificate of probable cause as part of opinion denying writ). But see note 4, supra (citing cases in which district judges ruled on the motion for a certificate of probable cause after the notice of appeal had been filed). Circuit judges, in contrast, would have to obtain and then spend time familiarizing themselves with the often-chaotic records and pro-se briefs before they could evaluate requests for certificates.

See Robbins, The Habeas Corpus Certificate of Probable Cause, 44 Ohio St. L.J. at 330 (1953) (arguing that "the certificate was designed to free the appellate courts from reviewing frivolous habeas petitions, but the [proposed change] places them at the center of the decision regarding frivolousness and requires them to delve into the merits of the claim"). If the certificate were issued by a circuit judge, there is no guarantee that the same circuit judge would even sit on the panel assigned to hear the merits of the case. In this respect, then, allowing district judges to issue certificate of appealability would better serve the Act's purposes.

It is not clear to us whether restricting issuance of certificates of appealability to circuit judges or permitting district judges to issue certificates would necessarily lead to speedier resolution of habeas appeals. Courts are not well-suited to answering such empirical questions. However, we believe that efficiency considerations point toward permitting district judges to issue certificates of appealability, consistent with the detailed framework of Rule 22(b). See Robbins, The Habeas Corpus Certificate of Probable Cause, 44 Ohio St. L.J. at 332-335 (arguing that in order "both to fulfill further the congressional intent [to eliminate habeas petitions 'that are frivolous and cause unnecessary delay'] and to conform to the purpose of habeas corpus relief....[d]istrict judges should retain the power to issue certificates.").

The principle of lenity, that ambiguous criminal statutes should be construed narrowly, is relevant to this discussion. See generally United States v. R.L.C., 503 U.S. 291, 305-13, 112 S.Ct. 1329, 1338-42, 117 L.Ed. 559 (1992) (discussing Rule of Lenity). We do not believe this principle applies per se, because neither Rule 22(b) nor § 2253 is a criminal statute.

[11]

Cf. id. at 305, 112 S.Ct. at 1338 ("Rule has been applied not to resolve issue about the substantive scope of criminal statutes, but to answer questions about the severity of sentencing"). We do, however, share the underlying "instinctive distaste against me languishing in prison unless the lawmaker has clearly said they should." Id. (quoting United States v. Boss, 404 U.S. 336, 348, 92 S.Ct. 515, 523, 30 L.Ed. 2d 488 (1971), and HENRY J. FRIENDLY, BENCHMARKS 209 (1967). Because Congress may have intended that prisoners still have the choice of asking the district court to issue a certificate of appealability, a court should hesitate take the right away from them. This lends some support to our conclusion that the AEDPA allows district courts to issue certificate of appealability.

Because neither the legislative history nor any overwhelming policy considerations support a contrary reading, we hold that district judges may issue certificates of appealability under the AEDPA. We emphasize that this is what we believe Congress intended, and that we, too, welcome the clarification of this statutory conflict sought initially by the Judicial Conference prior to the Act's passage.

The new laws state that certificates may issue "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. §2253(c)(2). Because there is no indication that Congress intended to change the standard, its use of the language from Barefoot indicates endorsement of that case's approach, see 2A SUTHERLAND STAT. CONSTR. §45.15. ("[T]he legislature's use of statutory language similar to that used in a prior judicial decision should constitute legislative approval of that decision."). The AEDPA thus makes no change to the general showing required to obtain a certificate, and aside from the new specificity requirement discussed below, essentially makes only a change in nomenclature from a "certificate of probable cause" to a "certificate of appealability." Accord Herrera v. United States, 96 F.3d 1010, 1012 (7th Cir 1996); Reyes v. Keane, 90 F.3d 676, 680 (2d Cir. 1996); Lennox, 87 F.3d at 434-35. But, see Williams v. Calderon, 83 F.3d 281, 286 (9th Cir. 1996) (referring in dicta, without any discussion, "the Act's more demanding standard" for the issuance of a certificate of appealability.

[12]

The AEDPA, then, affects neither the authority of district courts to issue certificates of appealability nor the general showing necessary to obtain a certificate. The new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable. 28 U.S.C. § 2253(c)(3), i.e., which claims present a "substantial showing of the denial of a Constitutional Right". § 2253(c)(2).

In most, but not all, cases, new laws which affect only procedure or jurisdiction will not have an impermissible retroactive effect. Landgraf, 511 U.S. at 274-75, 114 S.Ct. at 1501-02. See Qasguargis vs. INS, 91 F.3d 788, 789 (6th Cir 1996)(order). For the reasons set forth below, we hold that the new requirement that a certificate of appealability indicate which specific issues make the "substantial showing" of § 2253(c)(2) falls well within the general rule and is not impermissibly retroactive.

As an initial matter, it is plain that retrospective application of this provision does not violate the Ex Post Facto Clause. The requirement that the certificate of appealability include a specification of appealable issues "does not punish as a crime an act previously committed, which was innocent when done; nor make more burdensome the punishment for a crime, after it's commission; nor deprive one charged with crime of any defense available according to law at the time when the act was committed". Collins v. Youngblood, 497 U.S. 37, 52, 110 S.Ct. 2715, 2724, 111 L.Ed. 2d 30 (1990).

Retroactivity analysis is not a science. See Landgraf, 511 U.S. at 270 114 S.Ct. at 1499 ("Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity.").

Although courts often state that the appropriate test is whether application of a new law "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.", Id. at 280, 114 S.Ct. at 1505, there is more to Landgraf than just this. "[A] statute 'is not made retroactive merely because it draws upon antecedent facts for it's operation.'" Id. at 270 n. 24, 114 S.Ct. at 1499 n. 24 (quoting Cox v. Hart, 260 U.S. 427, 435, 43 S.Ct. 154, 157, 67 L.Ed. 352 (1922)).

[13]

In deciding whether such a statute has retroactive effect we must also consider, at a minimum, "the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." Id. at 270, 114 S.Ct. at 1499. We first address whether applying the Act would "impair rights a party possessed when he acted." Before this year, a prisoner who could convince a judge that one of the claims in his rejected habeas petition was substantial was thereby entitled to appellate review of all the claims in that petition. If the Act applies, however, a court of appeals will address only the issues which are specified in the certificate of appealability. The Act could, then, be seen as impairing Landeros's right to have all his claims reviewed on appeal.

However, "[N]o one has a vested right in any given mode of procedure." Crane v. Hahlo, 258 U.S. 142, 147, 42 S.Ct. 214, 216, 66 L.Ed. 514 (1922). See Landgraf, 511 U.S. at 275, 114 S.Ct. at 1502 (noting "the diminished reliance interests in matters of procedure"). If the district court were to certify only certain issue for appeal Landeros could seek a broader certificate of appealability from a circuit judge. Landeros thus retains the right to request appellate consideration of his entire petition, and the change to the law does not impair his rights.

In Forest v. United States Postal Service, 97 F.3d 137 (6th Cir. 1996), Judge Jones held in an opinion for the court that the 1991 Civil Rights Act's extension of a statute of limitations should apply to a case where the defendant's discriminatory conduct predated the new law, in part because "the 1991 Act applies to [plaintiff's] conduct, the filing of the complaint which occurred after the enactment of the statute." Id. at 140. Just as new jurisdictional laws will regularly be applied to pending cases because jurisdictional statutes speak to the power of the court rather than to the rights or obligations of the parties", Landgraf, 511 U.S. at 274, 114 S.Ct. at 1502, (quoting Republic Nat. Bank of Miami v. United States, 506 U.S. 80, 100, 113 S.Ct. 554, 565, 121 L.Ed. 2d. 474 (1992) (Thomas, J., concurring)), so does § 2253(c)(3) address the court's responsibility.

[ 14 ]

We hold, then, that the provision of §2253(c)(1) requiring that certificates of appealability specify which issues are appealable should apply to this case before us. We are aware that this ruling puts us squarely in conflict with the Seventh Circuit's holding in Martin v. United States, 96 F.3d 853, 855 (7th Cir. 1996). In Martin, Chief Judge Posner held under quite similar circumstances that the new "certificate of appealability is not required for an appeal perfected before the effective date of the new statute." We agree with Martin that, under Federal Rule of Appellate Procedure 4(c) an inmate's appeal is "deemed filed when the prisoner hands the notice of appeal to the prison officials for filing." Martin, 96 F.3d at 855.

We do not, however, agree that requiring district judges to apply this portion of the AEDPA to petitions filed before April 24 "would attach a new legal consequence to a completed act." Id. The Martin decision does not explain the reasoning behind this conclusion, but instead directs us to Landgraf, 511 U.S. at 275 n.29, 114 S.Ct. at 1502 n.29, and to Judge Posner's opinion in Reyes-Hernandez v. INS, 89 F.3d 490, 492 (7th Cir 1996). The citation to Landgraf refers, we assume, to the Court's statement that "[a] new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under old regime...." Landgraf, 511 U.S. at 275 n.29, 114 S.Ct. at 1502 n.29.

The rule at issue in Martin and the case at bar does not, of course, concern the filing of anything; it directs the district court to issue certificates of appealability which are more specific than the old certificate of probable cause. We note, too, that the approach taken in Martin seems incompatible with the Seventh Circuit's later en banc opinion in Lindh v. Murphy, 96 F.3d 856 (7th Cir 1996) (en banc), cert. granted, ___ U.S. ___, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997). The Landgraf analysis in Lindh seems to take its touchstone a party's reliance on the old statute in conducting his affairs. See id. at 867 ("Lindh's litigating decisions were not affected by the difference between the versions of §2254.... The new law therefore governs our consideration of Lindh's contentions.").

[15]

See also id. at 863 ("We take it that under Landgraf a certificate of probable cause to appeal issued before April 24, 1996, authorizes an appeal, although after April 24, appeal depends on a 'certificate of appealability' under §102 of the 1996 Act....") (emphasis added). Lindh was decided eight days after Martin but does not mention the earlier case.

Under ordinary circumstances the plain language of a statute should control the statute's interpretation. In this case, however, the relevant provisions of the Antiterrorism and Effective Death Penalty Act do not yield a plain interpretation. Whereas section 102 of the Act, amending 28 U.S.C. §2253, provides that "[u]nless a circuit justice or judge issue a certificate of appealability, an appeal [of denial of a habeas corpus] may not be taken to the court of appeals," section 103 of the Act, amending Rule 22(b), provides that such an appeal may not be taken "unless a district or a circuit judge issues a certificate of appealability."

I recognize that it is possible to read sections 102 and 103 of the Act in harmony by supporting that, in section 2253(c)(1), Congress intended the word "circuit" to modify only "justice" and not "judge". To my mind, however, this contortion is too extreme to be considered meaningful and I am unwilling to rely upon it merely to avoid the fairly unremarkable conclusion that the Act points in two directions at once. My resistance to this approach is fortified by the fact that prior to Act, section 2253 provided that "[a]n appeal may not be taken to the court of appeals... unless the justice or judge who rendered the order or a circuit justice or judge issue a certificate of probable cause." Unless this passage was unnaturally redundant, the pre-Act phrase "circuit justice or judge" did not include the judges of the district courts.

I also reject the argument that Rule 22(b) does not conflict with section 2253 because it provides that the certificate of appealability should be issued "pursuant to section 2253(c)". To suppose that this clause renders a district court's issuance of a certificate unauthorized or, at the least, ineffectual, is to make nonsense of the great bulk of Rule 22(b)'s plain language.

To my mind, then, it is clear that, as amended, section 2253 excludes the district courts from the certification process while, at the same time, Rule 22(b) expressly includes them.

[16]

In such circumstances, our usual course is to consider the statute's legislative history. Unfortunately, the legislative history pertaining to these amendments is not enlightening. Both parties before this court, and the courts that have previously considered the problem, have concluded that the legislative history does not speak specifically to the role of the district courts in the issuance of certificates of appealability.

I have found no legislative history to upset this conclusion. However, whether district courts, appellate courts, or both courts acting in concert would be more or less efficient in the consideration of certificates of appealability is a legislative question. It is not within a court's competence to suppose Congress's intent by speculating as to the balance of these efficiencies.

Recognizing that the weighing of efficiencies is a peculiarly legislative function does not, of course, resolve the statutory conundrum before us. Rather, it leads me to the conclusion that the intended application of Rule 22(b) and Section 2253 must be gleaned solely from an analysis of the present and past language of these provisions. To this end, it seems most likely that Congress either (1) intend to delete the district court's authority in section 2253(c) but neglected to amend Rule 22(b) ~~accordingly~~ accordingly, or (2) intended to retain the district court's authority in Rule 22(b) but inadvertently deleted it in section 2253(c).

The possibility that Congress intended to require both the district court and the circuit court to issue a certificate of appealability is one I reject because it offends the apparent meaning of both section 2253 and Rule 22(b). I conclude that district courts are authorized to issue certificates of appealability and that, where the district court does issue such a certificate, "a circuit justice or judge" is not also required to do so. It seems to me more likely that Congress accidentally excluded the district courts from section 2253 than it does that Congress intended this exclusion but failed to notice or remedy the substantial contradictory language of Rule (22(b). Had Congress made no changes whatsoever to Rule 22(b), the contrary result might be more reasonably inferred. In light of section 103 of the Act, however, there can be no doubt that Congress was cognizant of Rule 22(b).

[ 17 ]

In my opinion, the amendments to section 2253 and Rule 22(b) are more reasonably read as retaining the district court's authority to certify habeas appeals to this court. The controlling case is cited out of LYONS v. OHIO ADULT PAROLE AUTHORITY, 105 F.3d 1063 (6th Cir. 1997). Petitioner submits his Motion For Authorization to proceed with a certificate of appealability in good faith, and is being held in confinement within the Texas Department of Criminal Justice Institutional Division on a (35) years sentence. Eight Amendment prohibits punishment which, although not physically barbarous, involve unnecessary and wanton inflictions of pain are those that are totally without penological justification. U.S.C.A. Const Amendments 8, 14.

### PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Petitioner Respectfully Prays to Move this Honorable Court to Grant this Petitioner's Motion For Authorization To File To Proceed With A Certificate of Appealability due to the genuine issues at hand. Petitioner humbly requests that this Court give him the chance to be heard and issue a Certificate of Appealability on each of the above questions in this Cause and all fairness and any other relief that this Court deems appropriate.

Respectfully Submitted,

Jose Angel Landeros #556983
Petitioner Pro Se
Jose Angel Landeros
TDCJ-ID # 556983
Preston E. Smith Unit
1313 County Rd. 19
Lamesa, Texas 79331-1348

### CERTIFICATE OF SERVICE

I, Jose Angel Landeros, TDCJ-ID #556983 Petitioner Pro Se Do Hereby Certify and Swear under Penalty of Perjury that the above Petitioner's Motion For Authorization To Proceed With A Certificate of Appealability is in fact true and correct to the best of my knowledge and has been forwarded by U.S. Mail, First Class, Postage Prepaid to the United States District Court For The Southern District Brownsville Division P.O. Box 61010 Houston, Texas 77208. Executed on this ___3rd___ day of ___July___ 2002.

Respectfully Submitted,

Jose Angel Landeros #556983
Petitioner Pro Se
Jose Angel Landeros
TDCJ-ID # 556983
Preston E. Smith Unit
1313 County Rd. 19
Lamesa, Texas 79331-1348

[18]